You may be seated. Good morning. This is case number 4-13-0649, Melanie Johnson, excuse me, Melanie Johnson versus, I don't know, something's messed up here, versus Winebreiner. Your Honor, the underlying case was that the state used the service name, so on appeal, it's really Melanie Johnson versus the plaintiff's apple, the state... That's what's confusing me. Thank you. Alright. And let's see, so Attorney McPike is here on behalf of the appellant? Correct. And Attorney O'Brien is here on behalf of the state? Yes, Your Honor. Okay. Oh, no, not on behalf of the state. She is on behalf of Johnson. The state is the appellant. Gotcha. I apologize to both of you. Oh, that's confusing. It is. I'll admit it. I'm confused. Your Honor, the issue here is whether Ms. Johnson was collaterally stopped in her negligence action, in her motion for summary judgment against the intervener state. The circuit court held on summary judgment that the state's lien did not apply to her settlement, her negligence settlement with the defendants. And counsel, I'm sorry to interrupt you right at the very beginning of your presentation, but I want to make sure of how things were presented to the trial court. Is it true that the state argued judicial estoppel and equitable estoppel only at the trial court level? That's correct, Your Honor. But as we stated in our brief, that does not prejudice Ms. Johnson because the only distinction between judicial estoppel is that it applies to the parties in the original action against third parties. Well, isn't it though, in terms of judicial estoppel, one of the elements is the positions taken must be given under oath. Yes, but that isn't necessarily an issue with collateral estoppel here because... And I do understand that. What I'm going to ask you here then is, did the trial court make a mistake in its ruling that neither judicial estoppel nor equitable estoppel applied? No. Okay, thank you. But collateral estoppel clearly does apply because the three requirements of collateral estoppel are met here. But how does the state get to make that argument unappealed when that argument was never presented to the trial court? Because the dispositive issues that the court found in the trial court would apply both to judicial estoppel and to collateral estoppel. The only issue that's different between judicial estoppel and collateral estoppel is the identity of the parties. And the fact that things have to be taken under oath wasn't really a part of the trial court's determination. So the distinction that things have to be under oath for judicial estoppel would not apply here. And in fact, actually it still would apply because the workers' compensation settlement approved by the commission is a final judgment on the merits, so it's equivalent to statements made under oath. So you haven't forfeited that argument, collateral estoppel? No, we haven't forfeited collateral estoppel. No, for two reasons. First of all, the distinction between judicial and collateral estoppel, identity of the parties and statements under oath, as you say, were not a part of the trial court's basis for decision. The similarities, the same arguments, the only argument on appeal and the only argument that really applies to collateral estoppel is the identity of the issues, which is the same for judicial estoppel and for collateral estoppel. That was the only argument in the trial court, whether the issues were identical. And the only argument on appeal is whether the issues are identical. And that was the basis of the trial court's ruling and it's also a basis on appeal. Mr. O'Brien doesn't raise any arguments about identity of the parties. He doesn't raise any arguments about statements under oath. So I see your Honor still has a question. You can proceed. As to the identity of the issues, the only issues on appeal, collateral estoppel and judicial estoppel are the same. And, Mr. Johnson, the two issues that are identical in both the workers' compensation settlement, which I will refer to as a finding of the Commission because the workers' compensation settlement approved by the Commission is a final judgment on the merits. So the two identical issues in the workers' compensation decision and in the summary judgment decision are, first, whether the January 14th accident was a proximate cause of the injuries to Ms. Johnson's wrist. The workers' compensation decision found that it was. And in summary judgment, Ms. Johnson argued that it was a later accident, a June 1 accident, that caused the injuries to her wrist. It's undisputed that the state compensated for the injuries to her wrist. The second issue that was identical in the workers' compensation decision and the summary judgment motion was whether the state compensated Ms. Johnson for the injuries to her elbow. It's undisputed that those injuries were caused by the January 14th accident. But Ms. Johnson asserted in her summary judgment motion that the state never compensated her for those injuries. So we have to keep in mind the elbow, the elbow to wrist, January 14th accident, June 1 accident. But those are the two identical issues. The workers' compensation decision held that the injuries to her hand and her arm, her wrist and her elbow, were all caused by a January 14th accident. Ms. Johnson asserted that the state employer settled with her on that basis and that was a specific finding in the workers' compensation settlement which became the final decision of the Industrial Commission. Now Ms. Johnson makes three arguments in her brief that are without merit. She first argues that the identity of issues was not met here because in her negligence action the state's 5B lien, its workers' compensation lien, was quote derivative unquote. That's in her brief at page 12. So she argues in the negligence action the state somehow had a burden of proof against the third party defendants. Such as the state had a burden of proof to prove that the defendants were negligent and that their negligence caused the injuries on January 14th. And that that is not an issue, was not an issue in the workers' compensation settlement. So therefore, Johnson argues, identity of issues is destroyed. But that argument is wrong because its premise is false. The Section 5B lien, and we cite, we have the entire text of Section 5B on page 1 of our brief, or excuse me, page A1 of our appendix in our brief. The Section 5B lien is a separate part of that statute from the state's derivative action. The state's derivative action is the last paragraph of Section 5B and that provides that if the employee doesn't sue the third parties, the employer has a derivative action and the employer can sue the third parties. But that didn't happen here. The state's 5B lien is not a derivative action, it's a lien. And the state didn't have any burden of proof against any of the defendants in the negligence action. The state wasn't even a party in the negligence action. The state's lien only applies after either there's a negligence settlement or a negligence judgment, when all burden of proof issues against the defendants have been settled. So that argument is wrong and the identity of issues is not destroyed because the state's lien is not a derivative action. And again, if you look at the appendix in page A1, the first four paragraphs of 5B talk about the state's lien and the last paragraph talks about and if the employee does not sue the third parties, then the state can go sue the third parties. Those are two separate things under the statute. Johnson's second argument on page 14 of her brief is that the state's lien is somehow, quote, akin, close quote, to an employer suing a third party joint tort fees for contribution. So Johnson argues in that case the state would still have a burden of proof against the third party defendants and so the identity of issues is destroyed because those issues about third party defendants aren't issues in the workers' compensation settlement. But that argument, again, the premise of that argument is false also. The state here was not a joint tort feeser. There's no allegations anywhere that the state was negligent. Ms. Johnson was merely walking on her way to work when she was hit by a third party snowplow operator. The state did not, was not a party, didn't institute a suit for contribution against the defendants. Ms. Johnson did. And when Ms. Johnson was about to settle, the state asserted its lien. Counsel, and I'm not sure of the posture in the trial court here, but isn't it true that the plaintiff took the position that most of the wrist injury was related to the June filing accident, but she didn't say all of the wrist injury was due to the filing accident, but there was some that was attributable to the January snowplow accident? I could not tell you that for sure, Your Honor. Okay, but I mean when you look at the phraseology within some of the arguments and platings, it would indicate that she wasn't saying 100% of the wrist injury was attributable to the June filing accident. I mean why wouldn't that acknowledgement be sufficient to have averted summary judgment? I'm curious as to the all-or-nothing approach that you took in the trial court asserting estoppel, whether it be judicial, equitable, and now collateral. Why not just say there's a disputed issue of fact? Trial court needs to determine how much of the wrist injury was as a result of the snowplow accident in January, how much of it was as a result of the June filing accident, apportion the lien accordingly, and it's done right then and there. I'll have to take Your Honor's word for it because I'm actually not familiar with that distinction in the platings. Assuming that that's correct, the trial court cannot look behind the findings of the worker's compensation settlement, which was a decision of the Industrial Commission, and it found that all of her wrist injuries, the Industrial Commission found that all of her wrist injuries, based on Ms. Johnson's allegations in front of the Industrial Commission, were from the January 1st accident. That's a final decision. In the negligence action, the trial court, even if they couldn't apportion it because she's collaterally estopped, to make that argument. The worker's compensation settlement contract does not say that 100% of the wrist injury was as a result of the snowplow accident. It simply asserts that it is a proximate cause. It is a cause because at the worker's comp level, the claimant only has to assert that the industrial accident, the workplace accident, was a proximate cause. An injury can have more than one cause, true? That's true. What is it about the worker's compensation settlement contract that operates as a final adjudication that 100% of a plaintiff's right wrist injury was caused by the snowplow accident as opposed to the filing accident? Well, because I believe that the answer to that is that at the time that the settlement was finalized on 4-10-19-10, the showing in the worker's compensation settlement was that 10% is specified. 10% of the loss of use of the right hand, 6% of the loss of time, 15% of the total person. And for the total amount, we had compensated her for all that. Assuming your Honor's hypothesis, the state would still be entitled to the entire amount of her settlement even because of what you're saying because the state, as you recall in our brief, we make the argument that the damages don't have to match up exactly. The state compensated her to the tune of $35,000 for those injuries to her right wrist and the state is entitled to recoup all of that from the negligent settlement. The negligent settlement was less than that. So the state would still be entitled, even if there was that apportionment, to the entire amount of its lien. Did I make that argument clear? And I'll ask that same question of the opposing counsel. But that would be the basis for that distinction. I don't think either party really caught that point that your Honor caught about not asserting that 100% of the wrist injury was attributable to her June 1 accident. But in any event, and I'll refer back to our reply brief on page 13, which summarizes what we argued in our opening brief, that because the damages don't have to be the same, the state is entitled to recover all of its lien against whatever damages she receives in the negligence action. So even if you apportioned so much of it to the June 1 accident and so much of it to the January 14 accident, in the negligence summary judgment decision, the state would still be entitled to collect the entire settlement if any portion of that was attributed. But our position really is that the circuit court could not go behind the findings of the industrial commission. And then finally, Ms. Johnson argues that the state had a duty to examine the medical records and those medical records contained facts that were contrary to the workers' compensation decision that everything was attributable to the January 14 accident. And that therefore, Ms. Johnson is unfair to Ms. Johnson. But to the extent that those records do have facts that are contrary to the settlement decision, the workers' compensation decision specifically provided that issues exist between the parties, and this is on A18 of our appendix, issues exist between the parties, including as to whether petitioner has incurred injuries to the degree alleged. That's the January 14 accident. And this settlement is made to amicably settle those issues. So the fact that the medical records might have contained contrary information was agreed between the parties. We weren't going to dispute that. And besides that, the state really doesn't have a duty to protect Ms. Johnson against her own negligence or misrepresentations in what she represented to the industrial commission. She represented all of her injuries to her wrist at the time, at the date of the settlement. And I think that's another answer to your question. At the time of the date of the settlement, all her injuries to her wrist had been compensated by the state. That's not disputed. There wasn't a separate workers' comp claim filed for the June 2009 filing issue? No. And if there had been, it wouldn't be. And the record does not disclose it. Nobody in the Attorney General's office, I can assure you, at the trial level or in my office at the appellate level can understand why Mrs. Johnson didn't do that. That's all I have, Your Honor. So we would ask that this Court reverse the circuit court and grant summary judgment to the state on its lien. Thank you, Mr. McPike.  Thank you, Your Honor. May it please the Court. If you look at the language of Section 5B, which is really what I believe this issue is about, and counsel touched on that, he drew a distinction between the first paragraph of Section 5B of the Workers' Compensation Act and the last paragraph as giving different rights to an employer. And I think that's an inaccurate interpretation of Section 5B. Section 5B is titled, it applies to third-party liability. So whatever damages can be recovered by either an employer or an employee due to the negligence of a third party, their rights are the same under Section 5B, whether the employer files the suit within the last three months of the statute of limitations or whether the employee files the lawsuit within the two-year statute of limitations which applied in this case and which is what happened here. So the fact that, and I don't know that it's a part of the record, I didn't make it an argument, but the complaint was filed about two months before the statute of limitations expired here, so the state had that opportunity to file its own action. But to create a distinction is inaccurate because whether the state filed its own action or has a lien against the plaintiff's, the employee's, cause of action, it is derivative to the employee's claim. Anything the employer does is premised on the negligence of the third parties in the underlying lawsuit. And so the burden of proof that the employee has to prove proximate cause in the civil lawsuit is the same burden of proof that the employer would have had to prove had the employer, had the employee not filed her own action, and this was just the state of Illinois seeking reimbursement from Mr. Weinbrenner and his employer in the civil case, then we'd be analyzing, there wouldn't be an argument about proximate cause having to be proven. And that's an important argument here. But it does defeat collateral estoppel, because collateral estoppel is premised on the fact that the employee and the employer are on opposite sides in a new litigation in this case, and that's just not true. There are no claims filed against the employer, simply an argument as to application of its lien under a fair interpretation of Section 5B of the Workers' Compensation Act. One of the arguments counsel made earlier was talking about case law that says a lien can apply when damages are different. And I know the case law that says in the industrial commission, there's no distinction for pain and suffering. So a clever attorney, or tried to be clever, tried to distinguish pain and suffering in a case years ago by saying the lien won't attach to that, and the court said, no, you can't make that distinction about damages. That's not what this case is about. The distinction here are two different injuries, not different types of damages from one injury that occurred in January 2009. The settlement documents show that her settlement was based on the January 14, 2009 incident, which is the one with the third party, right? No. The settlement with the third party is strictly for the January 2009 accident, correct? Right. And the workers' comp settlement indicates that that settlement was paid for the injuries from the January 14, 2009 accident. That is what the document states, Your Honor, yes. So why doesn't that bind your client to applying her settlement with the third party to the state's lien? Because neither my client nor the state, if the state had filed its own action under Section 5B, neither of us could prove that the defendants in the civil action were approximate cause of the right-hand wrist injury, the de Quervin syndrome, if I'm saying that correctly, because we could not prove proximate cause. And in full confessional mode before this panel, when I filed the civil cause of action, I thought it was all connected to that case until we took the deposition of Dr. Newcomer, the medical expert who said, no, no, you're wrong. This wrist injury and hand injury for which the surgery and the temporary total disability, the bulk of the workers' comp settlement, was not related to the January 2009 incident at all. It was related to this complaint she made about lifting, doing a lot of lifting at work the day before, which is right there in June, this caused this injury. But she didn't submit a claim for that injury. She had the workers' comp. That is correct. But part of the argument that's being made against my client in this appeal is that she's getting some type of a double recovery, which is not the case. In trying to prove the case in the civil arena, going through the depositions, after the deposition of Dr. Newcomer, defense counsel rightfully said, well, we'll talk settlement with you, but we won't consider the injury, which now Dr. Newcomer said, was from June 1, 2009 on and is unrelated to this January 2009 incident. So now we've got two separate injuries defined by a physician. I don't have the ability as an attorney to establish medical proximate cause, and neither does my client. But a lot of the arguments being made in this appeal suggest that we have that ability. Okay, counsel. Let me just throw out a hypothetical. I want the hypothetical to be that you have simply the snowplow accident in January. You don't have a June work injury. You just have that January snowplow accident. And there is a recovery made via comp for injuries caused in that accident. Then there's a personal injury lawsuit that's filed. The employer asserts its 5B lien rights. There's no doubt that whatever is paid out in comp is compensable or reimbursable, I should say, via Section 5B. A hundred percent, right? Right. Okay. Unless it's negotiated with the employer. The twist here is that there's a second injury asserted. And a further twist that instead of the first injury having caused the wrist injury, it was in fact the second work injury that caused or the second accident that caused the wrist injury. And a further twist is that you have the workers' comp settlement identifying the first accident as having been the cause. Now, what I want to ask you is, had the state, instead of asserting judicial estoppel and equitable estoppel, simply said, look, there's a disputed issue of material fact here. There's been an admission, what's called the workers' compensation settlement contract, signed by the claimant, suggesting that there were wrist injuries included in that January accident. So to a certain extent, that should be treated as an admission. Therefore, a disputed issue of material fact exists. It stays in the trial court. What does the trial court do in terms of apportioning a portion of the personal injury settlement to the 5B, Section 5B reimbursement? How does the trial court do that? I don't think the trial court can. And I would respectfully state, Your Honor, that the reason why is I don't think an admission, in my understanding, I'm not an expert of the workers' compensation system, the Industrial Commission. I don't profess to be. But in trying cases and preparing cases for trial in civil lawsuits, where I represent plaintiffs, they're not allowed to ever provide testimony as to medical proximate cause. The law in Illinois requires, and it's not cited in the briefs because it's a point that I didn't anticipate. I think counsel mentioned that in his argument, that you would raise this. My argument is that my client does not have the capability and is not recognized under Illinois law to be able to be qualified to make an admission as to medical proximate cause. Only a medical doctor can do that in a civil case. And when we got to that in this case, there are no apportionment issues because Dr. Newcomer put a wall up and said, Nope, June 1, 2009 going forward, not related. I didn't have a medical expert to refute that. So I don't believe there's any issue of fact in dispute. Well, wasn't there medical treatment predating June 1 relative to the right risk? There was. And part of the quirkiness of this case is that what we could all agree on, the medical treatment right after this elbow injury in January was paid for by her health insurance. And the state has never stepped up to pay those bills, which we don't dispute are connected. So we faced in the civil court a separate lien from the health insurer. Now, we can probably all sleep well at night not worrying about whether a health insurer gets their lien money back. But needless to say, if we just looked at it from a chronological standpoint, then the health insurer would be first in line. I know that they're not first in line under Section 5B of the Workers' Comp Act. But these are bills that should have been paid by the state and weren't. Are they mistakes made by both sides? I suppose. Did people miss this? Yes. I guess certain things were missed. Okay. Then going back to the January snowplow accident, if, for the sake of this hypothetical, a plaintiff was claiming both an elbow and a wrist injury, and the trial court found that summary judgment, your client's summary judgment motion, should be denied because there was a disputed issue of material fact that remained, wouldn't it then be the trial court's obligation to determine how much of that personal injury settlement was for the right elbow versus the right wrist so that the state could receive reimbursement pursuant to Section 5B? If that were an issue, I would agree with you. But there was no wrist injury complaints until after this incident at work of lifting files in June of 2009. And I understand that's your argument. But under this hypothetical, if you don't have that second filing, the filing accident, which is the second accident, it would be the trial court's obligation to parse out those two injuries, right? Well, here's what I would. I'm not trying to. My argument is this, Your Honor. Had that issue been raised in the trial court, I would have attached an affidavit of defense counsel who agreed to the settlement. And by just an odd chance of fate, he was here arguing right before me, James Green, was the defense attorney on the civil case. I saw him coming up as he was going down. Had that been an issue, had the medical records shown some wrist injury complaints before that June incident, complained of the doctor newcomer, that would have been a different issue altogether. And if James Green, on behalf of his insurance client, would have said, we're only going to settle for the elbow injury and nothing else, and that's what this $27,000 is for, then I would have attached an affidavit itemizing or clearly identifying to the trial court what they were agreeing to settle, that they were denying proximate cause for the right wrist injury. I mean, I can tell you it's not a part of the record, but that's why this was a smaller settlement. Because they were, after Dr. Newcomer's deposition, they said, well, we won't pay you for that. We just won't. It wasn't an injury caused by us, which goes back to Section 5B. A lien applies only to injuries caused by the negligence of a third party. What the evidence in the case developed, not in the, I understand what the settlement contract and the industrial commission said, but once we did the discovery in the civil case, a wall went up at June 1st, 2009, saying your case doesn't go any further. That's what Dr. Newcomer said, and so we could not prove any longer that the right wrist or hand injury was caused by the negligence of a third party, which is what's required under 5B. So had the June 1st date been listed separately in the workers' compensation settlement agreement, which it could have been, it could have been identified as two separate injuries. I wasn't a party to that. I'm not a workers' compensation attorney, but that's my understanding, that you can list two separate dates of injury in a settlement agreement. We wouldn't be here, and there'd be no dispute. Part of the argument here is suggesting that Melanie Johnson's getting an unfair double recovery. Well, when you say you wouldn't be here, when you say you wouldn't be here, you would probably still be in the trial court trying to apportion the right wrist from the right elbow in terms of the 5B lane. Well, it would be the same issue. If counsel for the insurance company defended my case, said we won't pay for that, and that became an issue with the state, even with both dates on that settlement agreement and the industrial commission, then I go back to the affidavit of James Green. I would have had that affidavit saying, after following the deposition testimony of Dr. Newcomer, we agreed to settle only for the injuries related to our incident before June of 2009. The only thing that would avert having the two accident dates on the workers' compensation settlement contract would be this collateral stop argument. Which I don't think applies, because this is not a separate cause of action between the employer and the employee. It's a cause of action against a negligent third-party tortfeasor. I think that counsel's attempt to distinguish the first paragraph of Section 5B from the last paragraph of Section 5B has not been recognized in any case law in Illinois, and I don't think it's a fair argument to make. It's all the same. This entire Section B applies to negligence of a third-party tortfeasor, and we're all bound by the limitations of what you can recover from a third-party tortfeasor. Mr. O'Brien, wasn't there an offer to satisfy the state's lien by paying over $4,700 of the settlement? Yes, and in all honesty, in my reply brief in the circuit court, I acknowledged that some bills were paid by the state. So they do have a lien for some of the bills before June 1, 2009. The argument I made, and that was my initial mistake, was because OSF health plans paid the bills up from January 2009 to the middle of April 2009 when the state never reimbursed them for that. I still have that lien in the case. That might go away, depending on this Court's ruling, and never be reimbursed. But if this Court were to rule in favor of Melanie Johnson, which I would ask that they would, that's an issue that is not in dispute, and whatever bills were paid by the state would be reimbursed to them. I don't dispute that 5B lien. Now, if this Court had to send it back down to the circuit court to clarify that issue, I think that would be something that the state and Melanie Johnson would be able to resolve relatively quickly, depending on this Court's ruling. I can't speak for counsel. I don't suggest that, but I admit that that was an oversight. When I initially filed the motion for summary judgment, that I acknowledged in my reply brief down there, that they did pay some bills. I was always, on behalf of my client, willing to reimburse those, and that wasn't sufficient to resolve the case. Without, you know, I think that the argument that Section 5B is akin to contribution, it just goes back to the third-party liability issue. We cannot, neither the employer or the employee can succeed on recovering the workers' compensation payments, unless it's for an injury that somebody else's negligence caused. Neither of us have cited a case, and we wouldn't be here if there was a case directly on point that answered all these questions clearly, but I do think that the purpose of Section 5B has been met in this case, and I think that if there's, the State mentioned no prejudice to Melanie Johnson by the Court acknowledging a collateral estoppel argument here. What I would say is there's no prejudice to the State by what the lower court did. It's a fair ruling. It makes sense. It's logical. There's no double recovery for Melanie Johnson. If the lower court's finding is reversed, then there will be a double recovery to the State. The State will benefit from, however you'd want to call it, the fact that neither Melanie Johnson's attorney in the Industrial Commission or the State's attorney in the Industrial Commission chose to delve a little further into the medical records to determine what truly was caused by the January incident. But isn't that typically what happens? There's no discovery. Yes. But they have access to the medical records, and if that leads to an issue, you can take the testimony of the treating physician. You can hire an expert still. So there could have been more that could be done here, but when you look at the actual numbers, everybody has to do things on an economy of scale and be reasonable. That's why perhaps that didn't happen. But to then try to hold that against Melanie Johnson later on when a third-party tortfeasor finally answers those questions and says, we won't pay you for the hand or the wrist, and the State's still to say, well, that's all of our money. To the detriment of Melanie Johnson, and in all honesty, less of my concern, to the detriment of the health insurer, OSF Health Plans, who clearly paid the initial medical bills following this. That is unfair, and the State's trying to get an unfair bargain out of this appeal. Do they have a lien on the personal injury case, the private insurer? Yes. Thank you. Thank you, Your Honor. Mr. O'Brien. Mr. McPike. Free photo. To try and clear away the thicket here, I think it's important to remember the basic facts. Based on Ms. Johnson's representations, the State paid her $35,000 for an accident that occurred January 14th for injuries to her hand and her arm. That includes her wrist and her elbow. They paid her $35,000. If she has a recovery against the snowplow operator for anything that happened to her on January 14th, the State has a lien for $35,000 under Section 5B of the Starting on page 12 of my brief, the State is entitled to collect all of that negligent settlement. How does the State's 5B lien rights change? How does this case change if in the settlement contract it identifies both the January snowplow accident and the June 1 date? If both of them are in there, how does this change? I have to add a couple more facts to that to be able to answer your question. If that also provided that the injuries to her wrist were caused only by the January 1 accident, then that would be a final decision of the Industrial Commission. It says nothing different than what it currently says, but just simply adds the June 1 date to it. Well, then you would still have the State paying her $35,000 for injury to her arm and her wrist in an accident that occurred on January 14th. And regardless if there was a second accident on June 1, when Ms. Johnson recovered $28,000 from the third parties for the January 14th accident, the State would be entitled to $35,000. Isn't the answer that you wouldn't be able to argue collateral estoppel and this would be in the trial court? I don't think so, because unless the settlement agreement made specific findings of fact apportioning the damages, unless the settlement agreement, which is a final decision in the Industrial Commission, apportioned the injuries between January 14th and June 1. Do you think collateral estoppel would still apply? If the settlement agreement did not apportion the damages, assuming it alleged June 1 accident also, but it did not apportion injuries or damages between those two, the State would still be entitled to collect its entire lien amount, what it paid. $35,000 against any recovery for any amount from a third party for January 14th, because damages don't have to be identical. That's the Supreme Court case we cite on page 12. Not limited to the amount of third party recovery or the type of damages recovered. I stub my toe January 14th, June 1, I break my arm, Industrial Commission gives me $35,000, doesn't apportion between the two, I sue the guy who caused me to stub my toe, I get $28,000, the lien comes in, collateral estoppel, the State gets its $35,000. Thank you, Your Honors. We ask that you reverse the circuit court and grant some re-judgment to the State.